**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
PAUL J. WEEDEN JR., as Administrator for
the Estate of Paul J. Weeden, Sr.,

     Plaintiff,         **COMPLAINT**  3: 23-cv-0769 (BKS/ML)

vs.

FREDERICK BABCOCK, VILLAGE OF WALTON,

     Defendants.

------------------------------------------------------x

   This is a wrongful death action brought to vindicate the civil rights of the decedent who was shot to death by defendant Babcock, then a member of the Village of Walton Police Department.

**PARTIES**

   1.  Plaintiff, Paul J. Weeden, Jr., is the duly appointed administrator of the Estate of the decedent, his father, the late Paul Weeden, Sr.

   2.  At all relevant times, defendant Frederick Babcock was a member of the Village of Walton Police Department.  He committed the acts in question within this judicial district and under the color of state law.

   3.  At all relevant times, defendant Village of Walton was Mr. Babcock's employer and, through respondeat superior, is responsible for his actions which wrongfully caused the death of Paul Weeden, Sr.

1

**JURISDICTION**

4. As plaintiff alleges that defendant Babcock violated rights guaranteed to the decedent by the United States Constitution, this case presents a federal question, and this Court has jurisdiction pursuant to 42 U.S.C. sections 1983 and 1988 and 28 U.S.C. secs 1331 and 1343(a)(3) & (4).

5. Plaintiff timely filed a notice of claim against the defendant Village of Walton which has failed to adjust the claim.

6. Plaintiff's pendent claims arise from the same sequence of operative facts as does his federal claim; accordingly, this court has jurisdiction over them pursuant to 28 U.S.C. section 1367.

**STATEMENT OF FACTS**

7. Decedent was a disabled person with the meaning of federal and state law and the defendants knew of his mental and physical disabilities as he suffered severe respiratory compromise and used an oxygen tank to assist him breathe and had limited ability to ambulate.

8. On prior occasions, defendant Babcock and other members of the same barracks had responded to decedent's calls to his home for assistance.

9. At approximately 3:21 am on Monday, October 4, 2021, the decedent called 911 stating that he was going to hurt himself and demanding the presence of a police officer.

10.  The decedent further stated that the door to his home was unlocked and, when questioned, repeated his request for a police officer.

11.  Dispatch reached defendant Babcock and identified the call as "941", meaning a mental health call since the decedent had threatened to hurt himself.

12.  When defendant asked for more details, the dispatcher merely repeated the content of his brief conversation with the decedent.

13.  Defendant Babcock had previously responded to this residence and knew that Weeden suffered from serious health issues.

14.  In an interview following his shooting of Weeden, defendant Babcock falsely claimed that he had seen a rifle during a previous visit to the Weeden residence.

15.  Weeden did not own or possess a rifle.

16.  Regardless, both because he claims to have believed Weeden did have a rifle and understood that departmental protocol requires the presence of at least two police officers in response to a mental health dispatch, Babcock requested that the dispatcher Miller assign a second officer to respond to the call.

17.  Dispatcher Miller canvassed for an available officer and assigned Delaware County Sheriff's Deputy Logan Ravell, who was six miles from the Weeden home, to respond.  Ravel then responded to the Weeden residence.

3

18. At the time defendant Babcock responded, decedent was inside his residence, sitting or lying on a couch in the living room.

19. Rather than await the second officer, defendant Babcock approached Weeden and concluded that he was in an altered mental state though he did not know its cause.

20. The decedent told Babcock that he needed help and asked him to come toward him.

21. The decedent told Babcock that he was not going to hurt him and again asked him to come over.

22. During this exchange, Babcock claims to have seen a black pistol under a cover which decedent was using.

23. In fact, this "black pistol" was a pellet gun, easily distinguished from an operable weapon, and an object which did not pose a threat to defendant Babcock.

24. After he saw what he later claimed was a pistol, defendant Babcock retreated from the living room and moved back toward a small porch through which he had entered the home, an area separated by a glass door from the living space.

25. As he retreated, defendant Babcock failed to respond to dispatch.

26.  Defendant Babcock reached the dark porch and remained in that area rather than descend several steps and await the arrival of Deputy Sheriff Favell outside the premises.

27. Babcock claims that, as he stood on this porch, he saw Weeden's shadow approaching the glass door and then perceived Weeden standing at this door pointing his pistol at him.

28.  This observation, defendant Babcock claims, caused him to start discharging his service weapon an unknown number of times, striking, and felling Weeden.

29.  After so repeatedly shooting the decedent, Babcock moved closer to the shattered storm door and claims to have heard Weeden say something.

30.  Babcock claims that Weeden was still holding the pistol and lifted it, causing him again to fire his service weapon multiple times from outside the residence.

31.  After this second round of shots, Babcock called 911 for Emergency Medical Services.

32.  Babcock then opened the front door of the residence, entered, handcuffed Weeden and moved the "gun" away.

33.  Babcock did not commence any life-saving measures until more than four minutes after shooting Weeden, minutes after the arrival of Deputy Sheriff Ravell.

34. Between September 1, 2021, and the date of this shooting, some five weeks later, the decedent had requested emergency medical assistance on seven occasions, never threatening or harming any responding worker.

35. Weeden's "gun" was a pellet gun which does not expel bullets under high pressure with the use of explosive propellants, as firearms do.

36. The medical examiner determined that four of the nine shots Babcock fired struck Weeden, the most serious entering his left lateral back [left side of his back] and perforating his life lung and trachea before passing through his right arm.

37. This wound had no pseudo-stippling which means it was fired by Babcock either through the shattered storm door or after he re-entered the residence.

38. A second wound, which the Medical Examiner concluded had been caused by an earlier gunshot, penetrated the decedent's right anterior trapezius region, perforating his right chest cavity and lung before existing through the center of Weeden's back.

39. The medical examiner concluded that this wound would have caused Weeden's death quickly, calling into strong doubt Babcock's claim that he fired a second volley of shots upon seeing the decedent raise a gun or hearing him speak.

40. Decedent had no prior known history of violence toward any police officer.

41. At the time he was shot to death, no civilian was in the apartment and decedent posed no threat to any civilian.

42. Defendant Babcock had no reason to believe anyone else was in the home and had been at the home for at least four minutes before shooting the decedent and, during this time, perceived no third party or person in the residence.

43. At all relevant times, defendant Babcock knew that a second police officer had been dispatched and could have awaited the arrival of back-up before entering the Weeden residence.

44. In fact, contrary to departmental protocol, he did not await back-up though he knew back-up was but a few minutes away and he faced no exigent circumstance which justified him abrogating this protocol.

45. Upon information and belief, decedent suffered apprehension, fright, and fear as a consequence of the use of excessive force by defendant Babcock.

46. By and through defendant Babcock's wrongful action, plaintiff has been deprived of the support and companionship of his father.

47. Defendant Babcock's use of lethal force was far disproportionate to any threat to anyone which decedent posed when he shot and killed him as the weapon in his possession was a pellet gun, which posed no threat to the officer

and a reasonably well-trained officer would have so recognized it for what it was.

### AS AND FOR A FIRST CAUSE OF ACTION
### NEGLIGENCE
### ON BEHALF OF ESTATE OF PAUL WEEDEN, SR. – SURVIVAL CLAIM
### (Against BOTH defendants)

48. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "47" above.

49. In light of the nature of the risk posed by the decedent, defendant Babcock's use of force was unnecessary and his discharge of multiple bullets negligent, that is, beneath the standard of care and practice expected of a reasonably trained police officer under the totality of these circumstances.

50. As defendant Babcock was acting as an agent of the defendant Village of Walton and within the scope of his employment when he fired the shots that killed decedent, defendant Village bears legal responsibility for his actions under the doctrine of *respondeat superior.*

51. As a result of being shot by defendant Village's agents, decedent suffered substantial conscious pain and suffering, including the fear of imminent death and defendants should be held jointly and severally liable for said compensatory damages.

52. Defendants Babcock's shooting and killing of decedent without sufficient provocation justifies, indeed requires, the award of punitive damages, as a means to punish him, to deter like acts and to serve as a beacon to those who would use excessive force without sufficient cause.

8

## AS AND FOR A SECOND CAUSE OF ACTION
### NEGLIGENCE
## ON BEHALF OF ESTATE OF PAUL WEEDEN SR. – WRONGFUL DEATH
### (Against BOTH Defendants)

53. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "52" above.

54. Defendant Babcock's negligent discharge of his firearm killed decedent, thereby causing pecuniary damages to his distributees, including, without limitation, loss of support and services, as well as funeral and burial expenses.

55. As defendant Babcock was acting as an agent of the defendant Village within the scope of his employment when he fired the shots which killed decedent, defendant Village bears legal responsibility for his actions under the doctrine of *respondeat superior.*

56. As defendant Babcock's shooting and killing decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish these defendants to deter like acts and to serve as a beacon to those who would use such excessive force.

## AS AND FOR A THIRD CAUSE OF ACTION
### BATTERY
## ON BEHALF OF ESTATE OF PAUL WEEDEN SR. – SURVIVAL CLAIM
### (Against both Defendants)

57. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "56" above.

58. Defendant Babcock intentionally discharged his firearm multiple times, repeatedly striking decedent's torso, thereby killing him.

9

59. In doing so, defendant police officer lacked any lawful justification.

60. As defendant officer was then acting as an agent of the Village and within the scope of his employment when he fired these shots and killed decedent, it bears legal responsibility for his actions under the doctrine of *respondeat superior*.

61. As a result of being shot numerous times by defendant Babcock, decedent suffered substantial conscious pain and suffering, including fear of imminent death.

62. Defendant's shooting and killing decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish them, deter like acts and serve as a beacon to those who would use excessive force.

## AS AND FOR A FOURTH CAUSE OF ACTION
### BATTERY
### ON BEHALF OF ESTATE OF PAUL WEEDEN SR. – WRONGFUL DEATH
### (Against BOTH Defendants)

63. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "62" above.

64. Defendant Babcock intentionally discharged his firearm on multiple occasions, striking decedent and killing him.

65. In doing so, defendant Babcock lacked any lawful justification.

66. Defendant Babcock's intentional discharge of his firearm killed decedent, thereby causing pecuniary damages to his distributees, including, without limitation, funeral, and burial expenses.

10

67. As defendant was acting as an agent of the defendant village and within the scope of his employment when firing these shots and killing decedent, the village bears legal responsibility for their actions under the doctrine of *respondeat superior.*

68. Defendant's shooting and killing of decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish defendants, to deter like acts and to serve as a beacon to those who would use excessive force.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**42 U.S.C. § 1983 – EXCESSIVE FORCE**
**ON BEHALF OF THE ESTATE OF PAUL WEEDEN SR.**
**(Against BOTH Defendants)**

69. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "68" above.

70. Defendant Babcock acted in a constitutionally reckless manner when he shot and killed the decedent; his use of lethal force was not objectively reasonable as neither he nor any third party was at imminent risk of serious injury or death by and through the actions of decedent.

71. By the use of such unreasonable force, defendant violated the decedent's right to be free of lethal force as guaranteed by the Fourth Amendment to the United States Constitution as made actionable against him by and through 42 U.S.C. section 1983.

72. Defendant Babcock's brazen actions – shooting a civilian who was on the other side of a glass door with a pellet gun and had never threatened him verbally and did not pose an imminent threat to any third party – is indicative of

11

the defendant Village's constitutionally defective training of its officers and a consequence of said deficient training in the protocol of responding to mentally ill persons.

73. As a result of defendant's unjustified use of lethal force and defendant Village's deliberately indifferent training of its officers with respect to responses to such situations, decedent was unlawfully seized in violation of the Fourth Amendment to the U.S. Constitution, deprived of his life and liberty and caused to suffer substantial pain and suffering.

74. Defendant Babcock's shooting and killing decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish them, to deter like acts and to serve as a beacon to those who would use excessive force.

**PRAYER FOR RELIEF**

**WHEREFORE** plaintiff prays that this Honorable Court accept jurisdiction over this matter, empanel a jury to truly and justly try this matter, award to plaintiff compensatory damages against both defendants, award punitive damages against defendant Babcock, award plaintiff the costs, disbursements and attorneys' fees arising from prosecution of the action and enter any other relief the interests of justice and equity require.

Dated:  June 26, 2023

Respectfully submitted,

Michael H. Sussman [103324]

12

SUSSMAN & GOLDMAN
Po BOX 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiff